UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| MARK GOETZ, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | No.1:07-cv-303 |
| | ) | *Edgar* |
| GREATER GEORGIA LIFE | ) | |
| INSURANCE COMPANY, UNICARE | ) | |
| LIFE AND HEALTH INSURANCE | ) | |
| COMPANY, WELLPOINT HEALTH | ) | |
| NETWORKS, INC. and DISABILITY | ) | |
| REINSURANCE MANAGEMENT | ) | |
| SERVICES, INC. | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM**

Plaintiff Mark Goetz initially brought his complaint in the Circuit Court for Hamilton County, Tennessee. [Court Doc. No. 1-2]. Defendants the Greater Georgia Life Insurance Company, Unicare Life and Health Insurance Company, Wellpoint Health Networks, Inc. and Disability Reinsurance Management Services, Inc. (collectively "Defendants") removed the action to this court. [Court Doc. No. 1].

Defendants removed the case to this court pursuant to 28 U.S.C. § 1331 alleging federal question jurisdiction because Plaintiff's complaint relates to rights arising under the terms of a group disability insurance policy governed exclusively by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants allege that because Plaintiff's claim is based on the Defendants' refusal to pay benefits under a group disability insurance plan (the "Policy") issued to Plaintiff's employer, his claim is for benefits due under an "employee

welfare benefit plan" as that term is defined under ERISA.  Thus, Defendants argue, Plaintiff's remedy lies solely with ERISA, 29 U.S.C. § 1132(a)(1)(B).  Defendants further argue that Plaintiff's state law claims are pre-empted by ERISA because the disability plan at issue does not constitute a "church plan" under ERISA, and thus it is not excluded from ERISA's coverage.

Plaintiff argues that his state law claims are not pre-empted by ERISA because the Policy at issue constitutes a "church plan" and is thus exempted from ERISA's coverage.  Plaintiff has moved to remand this action to state court.  [Court Doc. No. 5].  Defendants oppose the motion. [Court Doc. No. 11].  The motion is now ripe for this court's review.

## I. Background

Plaintiff Mark Goetz was employed by Precept Ministries of Reach Out, Inc. ("Precept Ministries") and was covered by a group disability insurance policy through his employer. [Court Doc. No. 1-2, Complaint].  Plaintiff ceased active employment in May of 2006 when he suffered a subdural hematoma on May 28, 2006.  Complaint, ¶¶ 11-12.  Plaintiff's head struck an unknown object during a fall.  *Id.* at ¶ 13.  Plaintiff's Complaint alleges the following facts:

> As a result of Plaintiff's subdural hematoma, he suffers hemiparesis, cognitive defects and other medical problems which Greater Georgia admits prevent him from performing each of the material duties of his regular occupation, as those terms are defined in the policy.
> Plaintiff was covered under Greater Georgia Life Insurance Company Group Policy Number GA0960 (hereinafter "THE POLICY") that provided periodic payments if Plaintiff satisfied the policy's definition of disability and satisfied other conditions as set out in the policy.

Complaint, ¶¶ 15-16.  Plaintiff filed a claim under the Policy, which Defendants denied.  Plaintiff appealed the decision, and Defendants affirmed the denial of disability benefits.  *Id.* at ¶¶ 17-25. Plaintiff's complaint alleges breach of contract, bad faith failure to pay the claim under the Policy, and a violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-

101 and 47-18-109. Complaint.

Plaintiff's Complaint asserts that the Policy constitutes a "church plan" pursuant to ERISA, 29 U.S.C. § 1002(33). Defendants disagree. They argue that Plaintiff's former employer, Precept Ministries, does not constitute a church as that term is defined under ERISA. Defendants provide evidence of the business purpose of Precept Ministries in support of its opposition to Plaintiff's motion to remand.

The evidence demonstrates the following facts regarding the function and purpose of Precept Ministries. Plaintiff's stepfather, Jack Arthur, testified at a deposition in this action that he is the "co-CEO and cofounder" of Precept Ministries. [Court Doc. No. 11-2, Deposition of Jack Arthur ("Arthur Dep."), p. 5]. Mr. Arthur testified that the officers and board of directors for Precept Ministries are required to be Christian, but do not have to be practicing members of any particular denomination. *Id.* at pp. 7-8. He further testified that Precept Ministries has one office in Chattanooga and sixteen other operating offices overseas. *Id.* at pp. 9-10. He agreed that "Precept puts on training conferences to train individuals . . . who are going to be Bible study teachers." *Id.* at p. 10. Precept Ministries publishes Bible study materials targeted towards both children and adults. *Id.* at p. 11. The organization further broadcasts a radio series and television show throughout the world that discusses topics of Christian interest. *Id.* at pp. 12-14. It also presents conventions and seminars for individuals at its Chattanooga facility and trains individuals to teach Bible studies. *Id.* at pp. 18-19.

Mr. Arthur confirmed that Precept Ministries is classified as a nonprofit entity pursuant to the Internal Revenue Code 501(c)(3) classification. Arthur Dep., p. 20. The organization does not have a pastor or priest on staff, nor does it have regular worship services at its facility. *Id.* at

p. 21. Employees of Precept Ministries do not "like to take the pulpit stand from any pastor at any church at any time" because the pastor or priest "belongs there. We don't belong there." *Id.* at p. 22. Precept Ministries is a "nondenominational Christian organization." *Id.* at pp. 23-24. Mr. Arthur signed an affidavit prior to his deposition indicating that Precept Ministries has an "established congregation." [Court Doc. No. 6-2, Affidavit of Jack Arthur ("Arthur Aff."), ¶ 4]. However, in his deposition, Mr. Arthur denied that Precept Ministries has a regular congregation and indicated that the organization does not provide regular religious services. Instead, religious services are "not regular in the least bit. They are as the occasion presents itself to an audience that comes into our premises here in Chattanooga or anywhere around the world actually. . . . it is not a regular happening." Arthur Dep. at pp. 26-27. Mr. Arthur confirmed that "vendor" is a good word to describe what Precept Ministries does. He agreed that Precept "is a vendor of religious services, educational services, and educational materials, as well as Christian materials." *Id.* at p. 31.

In Mr. Arthur's affidavit, he asserted that "Precept Ministries provides regular religious services and religious education for the young which includes the dissemination of the aforementioned doctrinal code." Arthur Aff., ¶ 6. However, employees of Precept Ministries do not sing songs or provide worship services or celebrations, but rather train individuals to teach Bible studies in the manner prescribed by the organization. Arthur Dep., at pp. 33-36. Mr. Arthur further confirmed that Precept is a vendor of Bible materials and services and that "we are what our name implies, a ministry. We're not a church." *Id.* at pp. 38-39. Mr. Arthur described Precept as a "parachurch" and that "[w]e're careful not to push ourselves into any church situation." *Id.* at p. 39.

Precept Ministries' website contains information regarding its Bible study materials, multiple publications, campus, broadcasts, and seminar, conference, and travel opportunities. The website does not contain any information suggesting that the organization has established worship times, an established congregation, or specific ties to any particular Christian denomination. [Court Doc. Nos. 11-6, 11-7, 11-8]. The record also demonstrates that Precept Ministries is an accredited member of the Evangelical Council for Financial Accountability. [Court Doc. No. 11-9]. Mr. Arthur's affidavit explains that the Evangelical Council for Financial Accountability is an "accreditation agency dedicated to helping Christian ministries earn the public's trust through adherence to seven Standards of Responsible Stewardship. Founded in 1979, it is comprised of over 1,200 evangelical Christian organizations, which qualify for tax-exempt, nonprofit status and receive tax-deductible contributions to support their work." Arthur Aff., ¶ 2.

**II.    Analysis**

Defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Further, 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The defendant seeking removal has the burden of proving jurisdiction in the district court. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369 (6th Cir. 2007).

Defendants argue that Plaintiff's claims are preempted by ERISA. 29 U.S.C. § 1144(a) states in part, ". . . the provision of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).

ERISA defines an "employee welfare benefit plan" broadly as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of . . . disability . . . .

29 U.S.C. § 1002(1).

Plaintiff argues that his claims relating to the alleged failure to pay disability benefits under the Policy is not preempted by ERISA because the Precept Ministries' group disability insurance policy is a "church plan" as defined by ERISA, 29 U.S.C. § 1002(33). Church plans, as defined by ERISA, "are not ERISA plans." *Chronister v. Baptist Health*, 442 F.3d 648, 651 (8th Cir. 2006). Plaintiff therefore moves this Court to remand this action to state court.

ERISA states in relevant part:

> (33)(A) The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26.
> (B) The term "church plan" does not include a plan–
> (i) which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in connection with one or more unrelated trades or businesses (within the meaning of section 513 of Title 26), or
> (ii) if less than substantially all of the individuals included in the plan are individuals described in subparagraph (A) or in clause (ii) of subparagraph (C) (or their beneficiaries).
> (C) For purposes of this paragraph–
> (i) a plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches. . . .

> (iv) An organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches.

29 U.S.C. § 1002(33).

Unfortunately, ERISA does not define "church," so courts have struggled to articulate some parameters for determining when an organization is a church or is a convention or association of churches. For instance, in *Chronister*, the Eighth Circuit addressed whether a nonprofit hospital's disability plan constituted a "church plan" under ERISA. 442 F.3d 648. The plaintiff in that case argued that the disability plan was exempt from ERISA as a "church plan" because Baptist Health, the nonprofit hospital employer, was controlled by or associated with the Baptist Church. *Id.* at 651. The Eighth Circuit disagreed. It adopted a three-part test first established by the Fourth Circuit in *Lown v. Continental Casualty Company* and determined:

> In *Lown*, the Fourth Circuit applied a non-exclusive three-part test to determine whether an organization shares common bonds and convictions with a church "[T]hree factors bear primary consideration: (1) whether the religious institution plays an official role in the governance of the organization, (2) whether the organization receives assistance from the religious institution, and (3) whether a denominational requirement exists for any employee or patient/customer of the organization." We find the Fourth Circuit's test useful and adopt it for analysis of the instant case. . . .
> Applying the *Lown* factors to the facts of this case, we find that Baptist Health's long-term disability-benefits plan is not a "church plan" under ERISA, and is, therefore, governed by ERISA. Accordingly, this court has subject matter jurisdiction to decide this matter. First, as stated above, the Arkansas Baptist State Convention has played no role in the governance of Baptist Health for nearly forty years. Moreover, the Arkansas Baptist State Convention does not appoint or approve of any of Baptist Health's board members. . . . Baptist churches are not hierarchically governed and it would be inaccurate to ascribe Baptist Health's generally religious outlook to a specific Baptist Church or association of Baptist churches given their disaffiliation with the Arkansas Baptist State Convention. Second, there is no evidence that Baptist Health received any support from the Arkansas Baptist State Convention after its dissociation. The only financial support mentioned comes from the Baptist Health Foundation, which is made up of a number of local business people with no requirement of any affiliation with the Baptist faith.

Third, Baptist Health's denominational requirement for certain employees of Baptist Health is limited to administrators, the president/CEO, chaplains, and board members. Management employees are instructed to be guided by Christian principles, not specific doctrines of a Baptist church. Baptist Health treats patients of all religions or faiths.

442 F.3d at 653 (quoting *Lown v. Continental Casualty Co.*, 238 F.3d 543, 548 (4th Cir. 2001)). The Eighth Circuit, like the Fourth Circuit in *Lown* concluded that the non-profit hospital's disability plan did not constitute a "church plan" under ERISA. *Chronister*, 442 F.3d at 654. *See also*, *Lown*, 238 F.3d at 548; *Coleman v. Pikeville United Methodist Hosp., Inc.*, No. 05-32-EBA, 2008 WL 819038 *3 (E.D. Ky. March 25, 2008) (determining that long-term disability plan was not a "church plan" under ERISA where employer was a nonprofit Methodist hospital and where the record did not reveal that the Methodist Church "control[led] or exert[ed] influence in any way in the governance of the Hospital"); *Duckett v. Blue Cross and Blue Shield of Alabama*, 75 F.Supp.2d 1310 (M.D. Ala. 1999).

A few federal cases have found organizations to constitute churches or associations of churches for purposes of ERISA. For example, in *Catholic Charities of Maine, Inc. v. City of Portland*, the district court determined that the Catholic Charities of Maine was an organization associated with a church pursuant to ERISA. 304 F.Supp.2d 77 (D. Maine 2004). The court found that "Catholic Charities is not a church, but it has close ties with the Roman Catholic Church in that it has membership, governing bodies, trustees, and officers in common with the Roman Catholic Diocese of Portland, and aims to implement the social teachings of the Catholic Church." *Id.* at 83. The court noted that the "Bishop of Portland essentially controls the Board of Directors" of the Catholic Charities organization. *Id.* at 85. Further, the Diocese of Portland provided financial assistance to the organization yearly and the organization's mission statement was devoted to implementing "the social teachings of Jesus Christ as taught by the Catholic

Church." *Id.*

In *Coleman-Edwards v. Simpson*, the district court determined that a benefit plan sponsored by the Concord Baptist Elementary School was a "church plan" for purposes of ERISA. No. 03-CV-3779, 2008 WL 820021 (E.D.N.Y. Mar. 25, 2008). The court found that the elementary school was not a separate legal entity from the Concord Street Baptist Church, and thus the benefit plan was a plan maintained by a church and was exempt from ERISA. *Id.* at *12. *See also*, *Friend v. Ancillia Sys. Inc.*, 68 F.Supp.2d 969 (N.D. Ill. 1999) (finding that benefit plan for employer Poor Handmaids of Jesus Christ constituted a "church plan" for purposes of ERISA).

In *Friend*, the district court cited a set of factors the Department of Labor has found useful in determining whether an organization is a church for purposes of ERISA. These factors include whether:

> a religious order or congregation controls the entities sponsoring the plan; the operation of the organization furthers the goals of the religious order; the entity and/or the religious order are listed in an official religious directory; the organization is a not-for-profit tax exempt entity pursuant to § 501 of the Internal Revenue Code; and members of the religious order sit on the board of directors of the organization.

68 F.Supp.2d at 972 (citations omitted). The court found that the Poor Handmaids of Jesus Christ met all the factors established by Department of Labor Opinion Letters, and thus was a "church" pursuant to ERISA.

Although not part of ERISA, the Internal Revenue Service has provided guidelines for determining whether an organization constitutes a church for federal tax purposes. *See e.g., Spiritual Outreach Society v. Commissioner of Internal Revenue*, 927 F.2d 335 (8th Cir. 1991). In

*Spiritual Outreach Society*, the Eighth Circuit noted the IRS criteria as follows:

> (1) a distinct legal existence;
> (2) a recognized creed and form of worship;
> (3) a definite and distinct ecclesiastical government;
> (4) a formal code of doctrine and discipline;
> (5) a distinct religious history;
> (6) a membership not associated with any other church or denomination;
> (7) an organization of ordained ministers;
> (8) ordained ministers selected after completing prescribed studies;
> (9) a literature of its own;
> (10) established places of worship;
> (11) regular congregations;
> (12) regular religious services;
> (13) Sunday schools for religious instruction of the young; and
> (14) schools for the preparation of its ministers.

927 F.2d at 338. In the *Spiritual Outreach* case, the Eighth Circuit determined that the organization at issue was not a church and found that "the existence of an established congregation served by an organized ministry, the provision of regular religious services and religious education for the young, and the dissemination of a doctrinal code, are of central importance." *Id.* at 339.

Although it is undisputed that Precept Ministries has 501(c)(3) status as a nonprofit entity pursuant to the Internal Revenue Code, it has few other indicia of a church. Mr. Arthur provided testimony in his deposition indicating that Precept Ministries is primarily a vendor of Christian Bible study products, and indeed, the website focuses much attention on the products for sale by the organization. [Court Doc. Nos. 11-6, 11-7, 11-8]. It has no established congregation, no established worship times or places of worship, no priest, deacon, minister, or pastor on staff. It does not have regular Sunday school classes, nor do its services consist of typical worship rituals, such as singing. Rather, Precept Ministries engages in providing conventions and seminars relating to its Bible studies; it broadcasts television and radio Bible study programs; and it sells

books and CD-roms relating to its Bible interpretations.  Members of the Board of Directors do not need to be members of any particular denomination; indeed, Mr. Arthur testified that Precept Ministries is a nondenominational Christian ministry.  Its board members and employees are not members of any particular denomination or church.  Mr. Arthur emphasized that Precept Ministries is not a "church," but rather is a "parachurch."  The organization does not like to take over a pastor's role in a church.  The organization is not associated with any particular church or denomination.  The record does not reveal that it receives any funding from any particular church, as the Catholic Charities received from the Catholic Diocese of Portland.  *See Catholic Charities of Maine*, 304 F.Supp.2d at 85.  Nor is any church closely associated with the governance of Precept Ministries.  Precept Ministries' website does not indicate that it serves to further the teachings of any particular church or denomination.  Nor does it appear to function to provide charitable services in accordance with the teachings of a particular church.  The organization appears to provide programming dedicated to Bible studies and to obtain funding through the sale of its publications and through its training workshops, seminars, and trips.

Precept Ministries does not meet any of the *Lown* factors analyzed by the Fourth and Eighth Circuits for determining whether an organization constitutes a church for purposes of ERISA.  *See Lown*, 238 F.3d at 548; *Chronister*, 442 F.3d at 653.  No specific religious institution plays a role in Precept Ministries' governance or provides critical funding for the organization.  Nor does Precept Ministries require its employees or Board members to be members of any particular Christian denomination.  The court thus concludes that Defendants have provided sufficient evidence regarding the nature of Precept Ministries for this court to determine that it does not constitute a "church" for purposes of ERISA.  Therefore, the Policy is not a "church

plan" exempt from ERISA's requirements. For this reason, the court will **DENY** Plaintiff's motion to remand.

### III. Conclusion

Based on the analysis *supra*, the court has determined that Plaintiff's motion for remand will be **DENIED**.

A separate order will enter.

/s/ R. Allan Edgar
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
